UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JUAN ACEVEDO,                        :

                    Petitioner,    :    10 Civ. 5285 (PAE)(HBP)

    -against-                    :    OPINION
                                    AND ORDER
JOHN B. LEMPKE,                      :

                  Respondent.    :

----------------------------------X


        PITMAN, United States Magistrate Judge:


I.   Introduction

        By notice of motion dated July 19, 2011 (Docket Item
10), petitioner seeks (1) to stay consideration of his habeas
corpus petition while he exhausts certain claims in state court,
and (2) to amend his petition to add those claims.  For the
reasons set forth below, the motion is denied in all respects.


II.  Facts

    A.  Facts Giving Rise to
        Petitioner's Conviction

        This proceeding arises out of petitioner's 2007 convic-
tion in the Supreme Court of the State of New York, Bronx County,
for murder in the second degree, in violation of New York Penal

Law Section 125.25(1).  Pursuant to that judgment, petitioner was
sentenced to an indeterminate term of imprisonment of 22 years to
life.  Petitioner is currently incarcerated pursuant to that
judgment.

According to the prosecution's brief on direct appeal
(Exhibit 2 to the Declaration of Assistant District Attorney
Nancy D. Killian, dated Aug. 8, 2011 ("Killian Decl.") (Docket
Item 11)), the evidence offered at trial established the follow-
ing facts.  From at least 2000 through 2002, petitioner was
romantically involved with and lived with Xiomara Morales; in
2002, they had a child together.  Although their romantic rela-
tionship ended in 2002, they continued to live together because
of the child and petitioner's inability to work as a result of an
earlier gunshot wound.  They also shared their apartment with six
children from their previous relationships.

In 2004, although Morales and petitioner were still
sharing an apartment, Morales began dating Domingo Rojas.  After
Morales and Rojas began dating, Morales asked petitioner to move
out, which angered petitioner.  In addition, on at least one
occasion in 2004, while Morales was speaking with Rojas on the
telephone, petitioner brandished a large knife in front of
Morales.

In 2005, petitioner and Morales came to an agreement that he would leave Morales' apartment as soon as he was physically able to do so.  On April 9, 2005, Rojas accompanied Morales to her apartment, leaving her at the apartment door.  After Rojas left, petitioner again brandished a large knife in front of Morales and said "I'm going to kill him."  Later that day, Morales spoke to Rojas on the telephone, in petitioner's presence, and arranged to meet him on the corner of the Grand Concourse and Kingsbridge Road.  After the call, and while Morales was in the bathroom preparing for her meeting with Rojas, petitioner left the apartment.

At approximately 8:46 that evening, Rojas collapsed on the street and died in the vicinity of the Grand Concourse and Kingsbridge Road.  A subsequent autopsy disclosed that a single stab wound to Rojas' neck and severed both his carotid artery and jugular vein.  The autopsy also revealed that he had lost a tremendous amount of blood and that both his shirt and jacket were soaked with blood.

Later that evening, petitioner visited the Bronx residence of Alejandro Ruiz, carrying a bag.  Petitioner asked Ruiz to keep the bag for him; when Ruiz asked what was in the bag, petitioner told him it contained a knife.  Petitioner subsequently asked Ruiz's wife if she had any Clorox.  She

provided petitioner with a bottle of Clorox which he took into the bathroom.  When petitioner left the bathroom, his pants appeared wet, as if he had been trying to clean them.

Thereafter, petitioner returned to Morales' apartment where he was arrested.  Subsequent forensic examinations established that Rojas's blood was on petitioner's pants and on the knife he had left with Ruiz.  In addition, the prosecution offered evidence that Rojas's fatal injuries were consistent with the knife petitioner left with Ruiz.

Petitioner did not offer any evidence.

B.  Prior Proceedings

Petitioner, assisted by counsel, appealed his conviction to the Appellate Division of the New York State Supreme Court, First Department, asserting two claims: (1) that the Trial Court should have charged the jury on the partial defense of extreme emotional disturbance and (2) that the sentence was excessive (Killian Decl., Ex. 1 at i).  The Appellate Division rejected both claims and affirmed petitioner's conviction on November 20, 2008.  People v. Acevedo, 56 A.D.3d 341, 867 N.Y.S.2d 430 (1st Dep't 2008).  The New York Court of Appeals denied leave to appeal on April 20, 2009.  People v. Acvedo, 12 N.Y.3d 813, 908 N.E.2d 929, 881 N.Y.S.2d 21 (2009).

4

On July 12, 2010, the Clerk of the Court docketed petitioner's habeas corpus petition[1] (Docket Item 1).  The petition appears to assert the same claims petitioner asserted on direct appeal.

In October, 2010, petitioner, proceeding pro se, filed a petition for a writ of error coram nobis with the Appellate Division for the First Department, claiming that his appellate counsel had been ineffective for failing to argue that (1) petitioner was denied Due Process because he was handcuffed during jury selection and trial, and (2) the Trial Court violated New York Criminal Procedure Law Section 310.30 in responding to two notes from the jury (Killian Decl. Ex. 5).  The Appellate Division denied the application without opinion on March 22, 2011 (Killian Decl. Ex. 7).  The New York Court of Appeals denied leave to appeal from this decision on August 11, 2011.  People v. Acevedo, 17 N.Y.3d 812, 954 N.E.2d 92, 929 N.Y.S.2d 801 (2011).

On October 10, 2010, petitioner filed a motion in the Trial Court pursuant to New York Criminal Procedure Law Section 440.10 claiming that (1) trial counsel was ineffective for stipulating to what Detective Joseph White would have testified to had he been called (Killian Decl. Ex. 8 at 6-7); (2) the

---

[1]The petition recites that it was delivered to prison authorities for mailing on May 1, 2010.

evidence was insufficient to sustain petitioner's conviction because there was no evidence establishing when or how Rojas' blood came to be on petitioner's pants (Killian Decl. Ex. 8 at 13-16), and (3) the use of a lab technician with no first-hand knowledge of the underlying tests to lay the foundation for the admission of the DNA analyses violated plaintiff's right to confront and cross-examine the witnesses against him pursuant to Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009) and Crawford v. Washington, 541 U.S. 36 (2004) (Killian Decl. Ex. 8 at 17-25).

The Trial Court rejected these claims in a decision issued on March 7, 2011, finding that all of petitioner's claims failed on substantive and procedural grounds (Killian Decl. Ex. 10).  Petitioner filed an application to appeal this decision to the Appellate Division; the record does not disclose the outcome of this application (Killian Decl. ¶ 12)

In October 2010, petitioner also sought to stay consideration of his habeas corpus petition pending the exhaustion of his state collateral attacks.  I denied that application without prejudice in an Opinion and Order, dated July 1, 2011 (Docket Item 8), finding that petitioner had failed to show good cause for his delay in bringing his state collateral attacks and had also failed to show that his unexhausted claims had merit.

III.   Analysis

As I noted in my July 1, 2011 Opinion and Order, although both the Court of Appeals for the Second Circuit and the United States Supreme Court have confirmed that a district court has the power to stay consideration of a state prisoner's petition for a writ of habeas corpus in order to permit the prisoner to exhaust his unexhausted claims, Rhines v. Weber, 544 U.S. 269 (2005); Zarvela v. Artuz, 254 F.3d 374 (2d Cir. 2001), the granting of such stay is not a matter of course.

> [S]tay and abeyance should be available only in limited circumstances.  Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.  Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Rhines v. Weber, supra, 544 U.S. at 277.  The Court in Rhines did not define "good cause," nor has the Court of Appeals for the Second Circuit.  Taylor v. Poole, 07 Civ. 6318 (RJH)(GWG), 2009 WL 2634724 at *30-*31 (S.D.N.Y. Aug. 27, 2009) (Gorenstein, M.J.)

(Report & Recommendation), adopted, 2011 WL 3809887 (S.D.N.Y. Aug. 26, 2011) (Holwell, D.J.).

Petitioner seeks to stay consideration of his petition while he exhausts a total of four additional claims, namely (1) appellate counsel was ineffective for failing to argue (a) that petitioner was denied due process because he was handcuffed during jury selection and trial, and (b) that the Trial Court violated New York Criminal Procedure Law Section 310.30 in responding to two notes from the jury; (2) trial counsel was ineffective for stipulating to the testimony of a single witness; (3) the evidence against petitioner was insufficient to sustain the conviction, and (4) the admission of certain DNA evidence without the testimony of the individuals who performed the actual analysis, violated petitioner's Sixth Amendment rights under Melendez-Diaz v. Massachusetts, supra, 557 U.S. 305, and Crawford v. Washington, supra, 451 U.S. 36.  As explained below, the first three of these claims plainly lack merit and there is, therefore, no reason to stay consideration of the petition while petitioner exhausts these claims and no reason to permit him to amend his petition to assert these claims.[2]  With respect to the fourth

_____

[2]Because a motion to amend a habeas corpus petition is governed by Fed.R.Civ.P. 15, Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001), the futility of the proposed claims not only
(continued...)

claim, petitioner has failed to show good cause for his delay in asserting the claim and, therefore, the motion to stay should be denied.

A.  Meritless Claims

1.  Claims Concerning
    Appellate Counsel

In his petition for a writ of error coram nobis, petitioner claimed his appellate counsel was ineffective for failing assert two claims:  (1) that petitioner was denied due process because he was handcuffed during jury selection and (2) that the Trial Court violated New York Criminal Procedure Law Section 310.30[3] in responding to two notes from the jury (Killian

---

[2](...continued)
justifies the denial of petitioner's motion to stay, it also warrants denial of the motion to amend the petition.  Sookoo v. Heath, 09 Civ. 9820 (JGK), 2011 WL 6188729 at *3 (S.D.N.Y. Dec. 12, 2011) (Koeltl, D.J.); Ayala-Heredia v. Exec. Office U.S. Marshals, 11-CV-1072 (RRM)(LB), 2011 WL 3348226 at *4 (E.D.N.Y. Aug. 02, 2011); Ortiz v. Health, 10-CV-1492 (KAM), 2011 WL 1331509 at *5 (E.D.N.Y. Apr. 6, 2011); Cordova-Diaz v. Brown, 10 Civ. 5133 (CM)(KNF), 2011 WL 723575 at *4 (S.D.N.Y. Feb. 8, 2011) (K.N. Fox, M.J.); Peralta v. Connelly, 06 Civ. 5360 (DAB), 2010 WL 3219326 at *5 (S.D.N.Y. Aug. 11, 2010)(Batts, D.J.) (adopting Report & Recommendation of Dolinger, M.J.)

[3]New York Criminal Procedure Law Section 310.30 provides:

> At any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to
> (continued...)

Decl. Ex. 5).  The record demonstrates that both specifications of ineffective assistance are fatally flawed.

    a.  Applicable Legal Principles

    In order to prevail on an ineffective-assistance-of-counsel claim, a habeas petitioner must meet the now-familiar, two-part test set forth in Strickland v. Washington, 466 U.S. 668, 686-87 (1984).

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
>                    *      *      *
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components.  First, the defendant must show that counsel's performance was defi-

---

[3] (...continued)
> the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case.  Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper.  With the consent of the parties and upon the request of the jury for further instruction with respect to a statute, the court may also give to the jury copies of the text of any statute which, in its discretion, the court deems proper.

cient.  This requires showing that counsel made errors
so serious that counsel was not functioning as the
"counsel" guaranteed the defendant by the Sixth Amend-
ment.  Second, the defendant must show that the defi-
cient performance prejudiced the defense.  This re-
quires showing that counsel's errors were so serious as
to deprive the defendant of a fair trial, a trial whose
result is reliable.  Unless a defendant makes both
showings, it cannot be said that the conviction . . .
resulted from a breakdown in the adversary process that
renders the result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid

v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002); Hernandez v.

United States, 202 F.3d 486, 488 (2d Cir. 2000); Hurel-Guerrero

v. United States, 186 F.3d 275, 281-82 (2d Cir. 1999); McKee v.

United States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v.

Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).  This same standard

applies to claims of ineffective assistance of appellate counsel.

Mercer v. Herbert, 133 F. Supp. 2d 219, 238 (W.D.N.Y. 2001) ("A

claim for ineffective assistance of appellate counsel is evalu-

ated upon the same standard as is a claim of ineffective assis-

tance of trial counsel."), citing Mayo v. Henderson, 13 F.3d 528,

533 (2d Cir. 1994); see also Hernandez v. Edwards, 98 Civ. 6704

(MBM), 2001 WL 575594 at *4 (S.D.N.Y. May 29, 2001) (Mukasey,

D.J.).

        In determining whether counsel's performance was

objectively deficient, courts "must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable

11

professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 689 (internal quotation marks omitted).

In the appellate context, "it does not suffice 'for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument.'" <u>McKee v. United States</u>, <u>supra</u>, 167 F.3d at 106, <u>quoting</u> <u>Mayo v. Henderson</u>, <u>supra</u>, 13 F.3d at 533. "Rather, it is the hallmark of effective appellate advocacy to choose wisely which claims are brought on appeal." <u>Fletcher v. Mann</u>, 956 F. Supp. 168, 173 (N.D.N.Y. 1997) (internal quotation marks omitted), <u>aff'd</u> <u>mem</u>., 165 F.3d 13 (2d Cir. 1998).  Thus,

> [i]n assessing the reasonableness of the arguments posed on appeal versus other possible nonfrivolous arguments, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal.  Generally, only when ignored issues "are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."

<u>Larrabee v. Smith</u>, 14 F. Supp. 2d 235, 239 (N.D.N.Y. 1998) (citations omitted), <u>quoting</u> <u>Mayo v. Henderson</u>, <u>supra</u>, 13 F.3d at 533; <u>see</u> <u>Torres v. Irvin</u>, 33 F. Supp. 2d 257, 265-66 (S.D.N.Y. 1998) (Cote, D.J.).

Because the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to the conviction be rejected.  Strickland v. Washington, supra, 466 U.S. at 697.

        b.  Application of
            Law to Facts

Turning first to petitioner's claim concerning being handcuffed in the view of the jury, the record demonstrates that petitioner affirmatively consented to being handcuffed in return for being permitted to stand during his trial.  The record discloses the following colloquy with respect to plaintiff's being handcuffed:

> THE COURT:    I was informed previously during the hearing that the defendant has requested that he be permitted to stand during the trial and I believe that this is attributable to a medical condition involving his back, and he has been permitted to do that.  But, under the circumstances, that does implicate among other things, I think, substantial and legitimate security concerns in this murder trial. So what I'm proposing is that the defendant be permitted to stand; but upon consultation with the court officers, I have been instructed to have him cuffed, and I would propose the following instructions to the jury.
>
>         Ladies and gentlemen, you may notice that the defendant Mr. Juan Acevedo may be standing during the trial.  This is with the permission of the Court and

> for reasons completely to anything con-
> cerning this case.  Please don't specu-
> late about this or draw any inferences
> from it whatsoever.  Further, you may
> notice as well that certain standard
> security concerns have been employed
> involving handcuffs.  This is standard
> policy, and you are not to draw any
> inference against the defendant because
> of this procedure.

(Transcript of Jury Selection at 9-10, quoted in the People's

Memorandum of Law in Opposition to Petitioner's Application for a

Writ of Error <u>Coram</u> <u>Nobis</u>, dated Jan. 2011, ("People's <u>Coram</u>

<u>Nobis</u> Memo."), at 4-5, annexed as Ex. 6 to Killian Decl.).

Defense counsel responded to the forgoing by thanking

the Trial Judge for his consideration and consenting to the

Judge's proposal.

> DEFENSE        Judge, the only thing I'll say is I
> COUNSEL:       appreciate those instructions.  Those were at
>                my request.  I have discussed with [defen-
>                dant] other possibilities, about him being
>                able to sit, even for short periods of time,
>                say 20 or 30 minutes, with a couple of min-
>                utes of breaks, because it will be outside
>                the normal experience.  [Defendant] says
>                really this is by far the best circumstance.
>                And I had a chance to speak with our seageant
>                here, who indicated if defendant is going to
>                be standing, he will need to be handcuffed
>                for everybody's safety and for ability of the
>                officers to take custody and control of the
>                defendant.  I indicated to the defendant that
>                would be a consequence of standing and, given
>                that fact, is there any way he would be com-
>                fortable sitting, and he indicated, no the
>                handcuffs would not be a problem physically
>                for him nor would standing.  So with those

14

> things, essentially with the consent of the
> defendant, I understand the security concerns
> of the Court, and since this is a murder-two
> case, which I would imagine the jury would
> reasonably believe the defendant would be in
> custody anyway, I think this may be a no-
> harm, no-foul kind of situation.  So those
> instructions are at my request.

(Transcript of Jury Selection at 10-11, quoted in People's <u>Coram</u>

<u>Nobis</u> Memo. at 5, annexed as Ex. 6 to Killian Decl.).

The Trial Judge subsequently took the extra step of

confirming directly with petitioner that he consented to being

handcuffed in return for being permitted to stand:

> THE COURT:     Mr. Acevedo, do you understand what we are
>                doing?  And is this with your consent, re-
>                garding your understanding and the fact that
>                you will be cuffed and I will tell the jurors
>                to draw no inference at all from that?
>
> DEFENDANT:     Yes, that's fine.

(Transcript of Jury Selection at 26-27, quoted in People's <u>Coram</u>

<u>Nobis</u> Memo. at 5, annexed as Ex. 6 to Killian Decl.).

In light of the foregoing, there can be no question

that petitioner's being handcuffed was on consent and was a

consequence of petitioner being allowed to stand during the

proceedings.  Moreover, the Trial Judge took the additional step

of providing special instructions to the jury concerning peti-

tioner's being handcuffed.  In light of these facts, any Due

Process claim based on petitioner's being handcuffed would have

15

bordered on being frivolous, and appellate counsel was not
ineffective for declining to assert this claim.

Petitioner's second argument concerning his appellate
counsel's failure to raise a claim concerning Section 310.30 is
equally deficient.

The New York Court of Appeals has endorsed a five-step
process for trial courts to use in responding to jury notes in
criminal cases.

> We further hold that, in most cases, this require-
> ment of meaningful notice is best served by following
> the procedure that was outlined in United States v
> Ronder (639 F2d 931, 934, supra; accord, People v
> Miller, 163 AD2d 491).  Under this procedure, jurors'
> inquiries must generally be submitted in writing,
> since, as the trial court in this case recognized,
> written communications are the surest method for af-
> fording the court and counsel an adequate opportunity
> to confer.  Further, whenever a substantive written
> jury communication is received by the Judge, [1] it
> should be marked as a court exhibit and, [2] before the
> jury is recalled to the courtroom, read into the record
> in the presence of counsel.  Such a step would ensure a
> clear and complete record, thereby facilitating ade-
> quate and fair appellate review.  After the contents of
> the inquiry are placed on the record, [3] counsel
> should be afforded a full opportunity to suggest appro-
> priate responses.  As the court noted in Ronder (supra,
> at 934), [4] the trial court should ordinarily apprise
> counsel of the substance of the responsive instruction
> it intends to give so that counsel can seek whatever
> modifications are deemed appropriate before the jury is
> exposed to the potentially harmful information.  Fi-
> nally, when the jury is returned to the courtroom, [5]
> the communication should be read in open court so that
> the individual jurors can correct any inaccuracies in
> the transcription of the inquiry and, in cases where
> the communication was sent by an individual juror, the

> rest of the jury panel can appreciate the purpose of
> the court's response and the context in which it is
> being made (id.).

People v. O'Rama, 78 N.Y.2d 270, 277-78, 579 N.E.2d 189, 192, 574

N.Y.S.2d 159, 162 (1991).  The decision in O'Rama was not in-

tended "to mandate adherence to a rigid set of procedures, but

rather to delineate a set of guidelines calculated to maximize

participation by counsel at a time when counsel's input is most

meaningful, i.e., before the court gives its formal response."

People v. O'Rama, supra, 78 N.Y.2d at 278, 579 N.E.2d at 193, 574

N.Y.S.2d at 163; see also People v. Kisoon, 8 N.Y.3d 129, 134-35,

863 N.E.2d 990, 992-94, 831 N.Y.S.2d 738, 740-41 (2007).

Petitioner contends that the Trial Court failed to

comply with foregoing procedure in two respects:  (1) it failed

to mark two notes as exhibits, and (2) it failed to read the

notes into the record in the presence of counsel (Petitioner's

Affidavit in Support of Motion for a Writ of Error Coram Nobis,

dated Oct. 5, 2010 ("Petitioner's Coram Nobis Aff."), at 6,

annexed as Ex. 5 to Killian Decl.).  The facts in the record,

record, however, do not support petitioner's claim.  The two

notes in issue -- Jury Note Numbers 1 and 2 -- were clearly

marked as Court Exhibits V and VI, respectively; the fact that

they were so marked is clear from their faces (Exs. B & C to

Petitioner's Coram Nobis Aff., annexed as Ex. 5 to Killian

17

Decl.[4]).  Similarly, the trial transcript demonstrates that both notes were read into the record in the presence of counsel and outside of the presence of the jury (Exs. B (Trial Tr. at 597) & C (Trial Tr. at 599-600) to Petitioner's Coram Nobis Aff., annexed as Ex. 5 to Killian Decl.).  Thus, an appellate claim based on the putative failure to comply with Section 310.30 would also have been doomed to failure.

Because both specifications of error by the Trial Court were baseless, any claim of ineffective assistance of appellate counsel based on his failure to the assert those specifications of error is plainly without merit.  "The failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a criminal defendant is] entitled."  Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) (citations and inner quotations omitted); see also Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require [appellate] counsel . . . to press meritless arguments before a court."); Samet v. United States, 09 CV 5190

_____

[4]As submitted to this Court, the Killian Decl. annexed Petitioner's Coram Nobis Aff. as Ex. 5.  The Killian Decl. did not, however, include the exhibits to Petitioner's Coram Nobis Aff.  Because they were material to an assessment of the claims in petitioner's application for a writ of error coram nobis, I requested that counsel for respondent to submit these exhibits, and she did so.  These exhibits will be docketed contemporaneously with this Opinion and Order.

(CM), 01 CR 216 (CM), 2011 WL 5548012 at *10 (S.D.N.Y. Nov. 14, 2011) (McMahon. D.J.) ("Samet's claims with regard to Mr. Burstyn are meritless, thus appellate counsel was not ineffective for not raising the claims on appeal."); Prendergast v. Rivera, 06 Civ. 5314 (BMC), 2011 WL 4899945 at *7 (E.D.N.Y. Oct. 13, 2011). Thus, appellate counsel's decision not to assert claims based on either petitioner's being handcuffed before the jury or the Trial Court's alleged failure to comply with Section 310.30 was not only reasonable, it was the only rational decision that could have been made with respect to these putative errors.  Appellate counsel's failure to assert these arguments was not ineffective assistance.  Accordingly, there is no reason to stay consider-ation of the petition with respect to the claim concerning petitioner's appellate counsel and no reason to permit the petition to be amended to add such a claim.

>    2.   Claims Asserted in
>         Petitioner's 440.10 Motion

Two of the three claims that petitioner asserted in his 440.10 motion, and seeks to add here, are also meritless. In addition, petitioner has failed to how good cause for his delay in exhausting the third claim asserted in his 440.10 motion.

        a.   Stipulation Concerning
             <u>Detective White's Testimony</u>[5]


     Detective Joseph White was one of the detectives who

participated in the investigation of Rojas' death.  The Honorable

Dennis J. Boyle, Acting Justice of the Supreme Court, who pre-

sided over petitioner's trial, summarized the testimony given by

Detective White at a <u>Mapp</u> hearing as follows:

          Detective White went to [petitioner's brother-in-
          law's apartment.]  When at that location, he conducted
          an interview through which he learned that the [peti-
          tioner] had been there earlier, socializing with the
          tenant of the apartment and that [petitioner] had used
          Clorox "to remove stuff from his clothing."  Detective
          White then left the apartment . . . and proceeded to
          [Morales' apartment.]  When at that location, Detective
          White spoke to two men and asked them to gather some of
          Juan Acevedo's clothing so that Detective White could
          take it back to the precinct with him.  The detective

---

     [5]Notwithstanding respondent's argument to the contrary, this
claim is not procedurally barred.  When a criminal defendant
makes a post-trial motion to vacate asserting the ineffective
assistance of trial counsel, New York ordinarily requires the
defendant to submit an affidavit from trial counsel explaining
the reasons for the conduct claimed to constitute ineffective
assistance.  <u>See</u> <u>People v. Chen</u>, 293 A.D.2d 362, 363, 742
N.Y.S.2d 199, 200 (1st Dep't 2002).  Although the Trial Court
referred to petitioner's failure to submit such an affidavit in
support of this aspect of his 440.10 motion and noted that this
failure was a sufficient basis, by itself, to warrant denial of
petitioner's motion (Decision of the Honorable Dennis J. Boyle,
dated Mar. 7, 2011, at 2, annexed as Ex. 10 to Killian Decl.),
this does not constitute an adequate independent basis for
rejecting petitioner's claim of ineffective assistance.  <u>Byrd v.</u>
<u>Evans</u>, 420 F. App'x 28, 30 (2d Cir. 2011); <u>Jenkins v. Greene</u>, 630
F.3d 298, 303 (2d Cir. 2010).  Accordingly, I address the merits
of this claim.

> was given some clothing of the [petitioner's] at which
> point Detective White returned to the precinct.
>
> After his arrival at the precinct, Detective White
> administered Miranda Warnings to the [petitioner]
> through a translator.  The [petitioner] did not, how-
> ever, make a statement.  Then, again through an inter-
> preter, Defendant White asked the [petitioner] to
> remove his clothing.  The [petitioner] complied and was
> given the clothing to wear which Detective White had
> obtained from the apartment.  The time was approxi-
> mately 6:30 a.m.  The clothing which defendant had
> taken off was then vouchered and sent to the police lab
> for testing.

(Pretrial Decision, dated Apr. 27, 2007, quoted the People's

Memorandum of Law in Opposition to Petitioner's Motion Pursuant

to New York Criminal Procedure Law Section 440.10, dated January

2011 ("People's 440.10 Memo."), at 7, annexed as Ex. 9 to Killian

Decl.).

Detective White had retired by the time of petitioner's

trial, and counsel stipulated that he would have testified that

after petitioner had been arrested and was at a precinct station

in the Bronx, Detective White asked petitioner to remove his

clothing and that he took petitioner's clothing and properly

secured it (People's 440.10 Memo. at 7, annexed as Ex. 9 to

Killian Decl.).  Petitioner makes no claim that the clothing that

was secured (and subsequently found to contain Rojas' blood) was

not his; he makes no claim that the prosecution tampered with the

clothing in any way; he makes no claim that the testimony Detec-

tive White gave at the <u>Mapp</u> hearing was inaccurate in any re-
spect.  In short, petitioner makes no claim that the live testi-
mony of Detective White would have had any effect on the outcome
of the trial and no claim that the live testimony of Detective
White would have resulted in an outcome that was more favorable
to petitioner.

Justice Boyle rejected petitioner's claim concerning
the stipulation to Detective White's testimony with the following
reasoning:

> [T]he trial record reflects that the testimony to which
> counsel stipulated, relating to Detective White, was
> minor in significance, relating largely to chain of
> custody matters and had already been testified to --
> and subjected to cross examination -- at a pretrial
> hearing.  The stipulation here in issue did not subject
> [petitioner] to any prejudice whatsoever; indeed,
> [petitioner] does not allege in what way the trial of
> his case was prejudiced by this stipulation or other-
> wise indicate how cross-examination of the detective
> before the jury would have been meaningful to the
> defense (See, People v. Rivera, 22 AD3d 888 lv. denied
> 6 NY3d 780; People v McCaskill, 217 AD2d 848, app.
> denied 87 NY2d 848, Habeas Corpus Denied 2001 WL
> 840331).  I would add, "[B]eyond that, the record
> reveals that defense counsel made appropriate objec-
> tions at trial, completely cross-examined witnesses and
> gave an effective summation" (People v. Rivera, supra
> at pg. 890; see People v. Rivera, 71 NY2d 705).

(Decision of the Honorable Dennis J. Boyle, dated Mar. 7, 2011,
at 2-3, annexed as Ex. 10 to Killian Decl.).

As explained in Section III(A)(1)(a), above, in order
to prevail on a claim of ineffective assistance of counsel,

petitioner would have to show that his counsel's errors were so serious that counsel was, in effect, not acting as counsel, and petitioner suffered prejudice as a result, i.e., that counsel's errors were so serious that the results of the trial are not reliable.  Petitioner's ineffective-assistance-of-trial-counsel claim meets neither criterion.  The testimony at issue is garden variety chain-of-custody evidence to which many counsel routinely stipulate in criminal trials in order to avoid burdening the jury with uncontroverted matters.  Second, petitioner does not even allege that the clothing in issue was not his or that Detective White's live testimony would have made an iota of difference in the trial's outcome.  Under these circumstances, there is no reason to believe, or even suspect, that Justice Boyle's analysis is incorrect, let alone rises to the level of "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. §  2254(d)(1). Thus, the claim is meritless.

## b.   Petitioner's Sufficiency Claim

The second claim asserted in petitioner's 440.10 motion -- the evidence was insufficient to prove his guilt  -- is meritless because it is procedurally barred.

i.  <u>Applicable Legal Principles</u>

A habeas petitioner's constitutional claim can be procedurally barred if it has not been asserted in state court proceedings in accordance with state procedural requirements and the state courts rely on that violation of state procedural requirements to reject the claim.  As the Court of Appeals for the Second Circuit has explained:

> The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Moreover, "[t]his rule applies whether the state law ground is substantive or procedural."  <u>Id</u>.
>
> *      *      *
>
> The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus . . . .  [I]nvoking principles of comity and federalism . . . federal habeas courts faced with an independent and adequate state ground of decision defer in the same manner as does the Supreme Court on direct review.

<u>Garcia v. Lewis</u>, 188 F.3d 71, 76 (2d Cir. 1999); <u>see</u> <u>also</u> <u>Beard</u> <u>v. Kindler</u>, --- U.S. ---, ---, 130 S.Ct. 612, 614 (2009) ("A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law

ground that is independent of the federal question and adequate to support the judgment.") (inner quotations omitted); <u>Cone v. Bell</u>, --- U.S. ---, --- 129 S.Ct. 1769, 1780 (2009) (A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." (inner quotation marks omitted)); <u>Downs v. Lape</u>, 657 F.3d 97, 101 (2d Cir. 2011); <u>Bierenbaum v. Graham</u>, 607 F.3d 36, 47 (2d Cir. 2010) (same); <u>Rivera v. Moscicki</u>, 03 Civ. 5810 (SAS), 2005 WL 2347840 at *2 (S.D.N.Y. Sept. 22, 2005) (Scheindlin, D.J.) ("A federal court generally may not review a state court decision that expressly relies on a procedural default as an independent and adequate state ground for dismissal.").

Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

> In <u>Harris [v. Reed</u>, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." <u>Harris</u>, 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted). We apply the <u>Long/Harris</u> presumption to the last "reasoned state

25

> judgment" . . . .  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S.
> 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

<u>Jones v. Stinson</u>, 229 F.3d 112, 118 (2d Cir. 2000).  <u>See also</u>
<u>Galarza v. Keane</u>, 252 F.3d 630,  637 (2d Cir. 2001)("We have
repeatedly stated that in order for federal habeas review to be
procedurally barred, a state court must actually have relied on a
procedural bar as an independent basis for its disposition of the
case, and the state court's reliance on state law must be unam-
biguous and clear from the face of the opinion.").

　　　　As long as the state court relies on a procedural bar
as an independent basis for its decision, a claim will be proce-
durally barred on federal habeas review even where a state court
addresses the merits of the claim in the alternative.  As the
Court of Appeals for the Second Circuit has noted:

> This court has held that "federal habeas review is
> foreclosed when a state court has expressly relied on a
> procedural default as an independent and adequate state
> ground, even where the state court has also ruled in
> the alternative on the merits of the federal claim."
> <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990);
> <u>Harris</u>, 489 U.S. at 264 n.10, 109 S.Ct. at 1044 n.10
> ("[A] state court need not fear reaching the merits of
> a federal claim in an <u>alternative</u> holding"); <u>Wedra v.
> Lefevre</u>, 988 F.2d 334, 338-39 (2d Cir. 1993).

<u>Glenn v. Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996).  <u>See also</u>
<u>Robles v. Superintendent of Elmira Fac.</u>, 07 Civ. 596 (LBS), 2007
WL 2600857 at *3 n.3 (S.D.N.Y. Aug. 30, 2007) (Sand, D.J.);
<u>Ashley v. Burge</u>, 05 Civ. 4497 (JGK), 2006 WL 3327589 at *5 n.5

(S.D.N.Y. Nov. 3, 2006) (Koeltl, D.J.); Santiago v. People, 97
Civ. 5076 (LAP)(SEG), 1998 WL 803414 at *4 (S.D.N.Y. Oct.13,
1998) (Preska, D.J.) ("When the state court rejects a claim both
on the merits and because it was waived under the state's proce-
dural law, review of the claim on a federal habeas corpus peti-
tion is barred.").

       However, even where the last reasoned decision of the
state court expressly rejects a federal constitutional claim on a
state procedural ground, federal habeas corpus review will not be
precluded if (1) the state procedural ground is not independent
and adequate, see Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir.
2006); Monroe v. Kuhlman, 433 F.3d 236, 241-42 (2d Cir. 2006);
Cotto v. Herbert, supra, 331 F.3d at 238-39; (2) there is cause
for and prejudice from petitioner's failure to assert his claims
in accordance with state procedural law, or (3) a failure to
consider the claim would result in a fundamental miscarriage of
justice. Schlup v. Delo, 513 U.S. 298, 324-27 (1995); Coleman v.
Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, 489 U.S.
255, 262 (1989); Green v. Travis, 414 F.3d 288, 294 (2d Cir.
2005). To establish a fundamental miscarriage of justice, a
habeas petitioner must show that a constitutional violation
probably resulted in his conviction despite his actual innocence.
United States v. Olano, 507 U.S. 725, 736 (1993) ("In our collat-

eral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); <u>Sweet v. Bennett</u>, 353 F.3d 135, 141 (2d Cir. 2003) ("A habeas petitioner may avoid [a procedural] default . . . by showing . . . that failure to consider the claim will result in miscarriage of justice, <u>i.e.</u>, the petitioner is actually innocent.").

ii.  Application of
<u>Law to Facts</u>

Petitioner asserted his collateral attack in the Trial Court pursuant to New York Criminal Procedure Law Section 440.10, subsection (2)(c) of which provides, in pertinent part:

> 2.  [T]he court must deny a motion to vacate a judgment when:
>
> *     *     *
>
> (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . .

Justice Boyle rejected petitioner's sufficiency claim, stating:

> The defendant's argument relating to an alleged insufficiency of the evidence bearing upon how the

28

> deceased's blood got on defendant's pants is record
> based and could have been raised on direct appeal.
> Accordingly this branch of defendant's motion must fail
> on procedural grounds (CPL section 440.10(2)(c)).

(Decision of the Honorable Dennis J. Boyle, dated Mar. 7, 2011,
at 3, annexed as Ex. 10 to Killian Decl.).  Although Justice
Boyle went on to consider the merits of this claim, as noted
above, this alternative holding does not preclude the application
of a procedural bar.

A state court's rejection of a motion to vacate pursu-
ant to 440.10(2)(c) is an adequate and independent state ground
sufficient to preclude review of the claim by way of a writ of
habeas corpus.  Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008);
Barksdale v. Sheriff of Monroe County, 09-CV-170 (MAT), 2011 WL
915584 at *3 (W.D.N.Y. Mar. 15, 2011); Oliveri v. New York, 07
Civ. 8262 (CM)(RLE), 2010 WL 5620926 at *6 (S.D.N.Y. Dec. 29,
2010) (Ellis, M.J.) (Report & Recommendation).

As noted above, petitioner could, theoretically,
overcome the bar resulting from the Trial Court's rejection of
the sufficiency claim on state law procedural grounds by showing
either cause for petitioner's failure to comply with state
procedural law and prejudice therefrom, or that a failure to
consider his sufficiency claim will result in a fundamental

miscarriage of justice.  Petitioner does not, however, attempt to make either showing.

Thus, petitioner's sufficiency claim is plainly meritless because it is procedurally barred.

> c.  Petitioner's Remaining
>     Confrontation Clause Claim

The foregoing disposes of all of the claims petitioner seeks to add to his petition except his claim that the admission of certain DNA evidence without the testimony of the individuals who performed the actual analysis violated his Sixth Amendment rights under Melendez-Diaz v. Massachusetts, supra, 557 U.S. 305 and Crawford v. Washington, supra, 541 U.S. 36 and .

The present state of the record is insufficient for me to conclude that this claim is so lacking in merit that a stay is inappropriate.  First, although the prosecution argued in re-sponse to petitioner's 440.10 motion that this claim, like petitioner's sufficiency claim, was record based and could not, therefore, be raised through a 440.10 motion, the Trial Court did not clearly rely on this procedural ground to reject this claim. Specifically, the Trial Court stated:  "While I recognize that the Melendez-Diaz case was decided by the United States Supreme Court after defendant's conviction, nevertheless, the alleged

error is record based and could have been raised on direct appeal (See, People v. Stewart, 67 AD3d 553, lv. granted 14 NY3d 805)" (Decision of the Honorable Dennis J. Boyle, dated Mar. 7, 2011, at 3, annexed as Ex. 10 to Killian Decl.).  Justice Boyle then went on to reject the claim on the merits.  It is unclear whether the foregoing language constitutes a ruling or an observation. Because a finding of procedural bar requires express reliance by the state court on the state-law procedural defect and the nature of the Trial Court's decision is ambiguous, it would be premature to reject this claim as plainly without merit on the ground that it is procedurally barred.

Second, although the respondent argues (and Justice Boyle correctly noted) that the overwhelming weight of authority holds that Melendez-Diaz is not retroactive to collateral attacks, see e.g., Williams v. Director, VDOC, 3:11CV392, 2011 WL 5526371 at *2 (E.D. Va. Nov. 14, 2011); Adams v. United States, 09-6152 (GEB), 2011 WL 1792562 at *3 (D.N.J. May 10, 2011); Vega v. Walsh, 06-CV-6492 (ARR)(JO), 2010 WL 1685819 at *10 (E.D.N.Y. Apr. 22, 2010), respondent does not explain how Crawford, which was decided before petitioner's trial, bears on petitioner's Confrontation Clause claim.  Because petitioner relies in part on Crawford in support of his Confrontation Clause claim, the non-retroactivity of Melendez-Diaz is not dispositive.

Third, neither the testimony nor the report that underlies this claim has been offered by either side. Thus, I do not even have a clear record concerning the events that give rise to this claim.

Given the foregoing, it is impossible to conclude with confidence that petitioner's Confrontation Clause claim is so plainly without merit that it should be rejected out of hand. Nevertheless, petitioner's failure to explain adequately why he did not exhaust this claim earlier warrants the denial of petitioner's motion.

As noted in my July 1, 2011 Order in this matter, neither the Supreme Court nor the Court of Appeals for the Second Circuit has defined the "good cause" necessary to justify a stay of a habeas corpus petition. Taylor v. Poole, supra, 2009 WL 2634724 at *30-*31.

> [M]ost courts have deemed [the good cause element] to require that the petitioner show that "some factor external to the petitioner gave rise" to his failure to assert the claims in state court . . . . Other courts have looked to the Supreme Court's analysis in Pace v. DiGuglielmo, 544 U.S. 408 (2005), in which the Court noted in dictum that "reasonable confusion normally will constitute good cause," id. at 416, and have suggested that this implied a somewhat more lenient definition of good cause.

Williams v. Marshall, 09 Civ. 7411 (RJH)(MHD), 2011 WL 1334849 at *2 (S.D.N.Y. Mar. 30, 2011) (Dolinger, M.J.), quoting Whitely v.

Ercole, 509 F. Supp. 2d 410, 417 (S.D.N.Y. 2007) (Hellerstein,
D.J.) (other citations omitted).  However, a substantial number
of District Courts have analogized the former definition of "good
cause" "to the requirement that a habeas petitioner demonstrate
cause to excuse other types of procedural defaults."  Whitley v.
Ercole, supra, 509 F. Supp. 2d at 417 (internal quotations
omitted).  The latter articulation has no relevance here because,
as explained below, the excuse proffered by petitioner does not
involve any claim of confusion.

        The sole justification petitioner offers for his
failure to exhaust his Confrontation Clause claim in a timely
manner is his lack of fluency in English and his assertion that a
bilingual law library clerk was not made available to help him
until April 2010.  However, a lack of fluency in English and
similar limitations have repeatedly been found insufficient to
constitute cause sufficient to excuse a procedural default.

> With regard to Petitioner's claim that he "speaks
> little or no [E]nglish," Petitioner's language skills
> are not "external to his defense within the meaning of
> Coleman and, therefore, cannot constitute "cause."  See
> Hull v. Freeman, 991 F.2d 86, 91 (3d  Cir. 1993) (find-
> ing that pro se prisoner's illiteracy and mental retar-
> dation are not factors "external" to defense and thus
> are insufficient to demonstrate cause); Roccisano v.
> United States, 936 F. Supp. 96, 99 (S.D.N.Y. 1996)
> (rejecting petitioner's argument that his limited
> English skills constitute external source under cause
> analysis).

Tineo v. United States, 977 F. Supp. 245, 254 (S.D.N.Y. 1996)
(Lowe, D.J.); see also Hughes v. Idaho State Bd. of Corr., 800
F.2d 905, 909 (9th Cir. 1986) (illiteracy not external factor
sufficient to excuse procedural bar); Tacho v. Martinez, 862 F.2d
1376, 1381 (9th Cir. 1988) (mental condition not external factor
sufficient to excuse procedural bar); Fabian v. Herbert, 00 Civ.
5515 (SHS)(RLE), 2003 WL 173910 at *4 (S.D.N.Y. Jan. 23, 2003)
(Ellis, M.J.) (Report & Recommendation) (inability to speak or
comprehend English insufficient to overcome procedural bar).

     Moreover, although the Court of Appeals has concluded
that an inability to speak English may provided a basis for an
equitable toll of the limitations period applicable to habeas
corpus petitions, it has required that a petitioner attempting to
rely on this excuse must demonstrate efforts to overcome the
linguistic deficit during the period he seeks to toll.  Diaz v.
Kelly, 515 F.3d 149, 154 (2d Cir. 2008); accord Rodriguez v.
Ercole, 08-CV-3745 (NG), 2010 WL 4669919 at *8 (E.D.N.Y. Aug. 2,
2010).  Assuming, without deciding, that this same standard could
be applied to habeas petitioner seeking a stay under Rhines,
petitioner here fails to meet it because he does not claim that
he made any effort to overcome his inability to speak English
between his conviction in 2007 and the Spring of 2010.

Thus, I conclude that petitioner has not shown good cause for his failure to exhaust his Confrontation Clause claim in a timely manner, and therefore, his motion for a stay and to amend his petition should also be denied with respect to this claim.

IV.  <u>Conclusion</u>

For all the forgoing reasons, all the claims petitioner seeks to exhaust and add to his petition are either plainly meritless or petitioner has failed to show good cause for his failure to exhaust state remedies in a timely manner.  Accordingly, petitioner's motion to stay consideration of his habeas corpus petition and to amend his petition is denied in all respects.  This Opinion and Order closes Docket Item 10.

Dated:  New York, New York
        February 3, 2012

                    SO ORDERED

                    _____
                    HENRY PITMAN
                    United States Magistrate Judge

35

Copies mailed to:

Mr. Juan Acevedo
DIN 07-A-4048
Five Points Correctional Facility
6600 State Road 96
Caller Box 119
Romulus, New York  14541

Nancy D. Killian, Esq.
Assistant District Attorney
Bronx County
198 East 161st Street
Bronx, New York  10451